PD-1010-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/5/2015 12:51:09 PM
Accepted 8/7/2015 10:24:33 AM
ABEL ACOSTA
CLERK

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** *APPELLANT* | § § § | |
| **V.** | § § § | **PD-___** |
| **DENNIS MICHAEL TAYLOR,** *APPELLEE* | § § § § | |

FILED IN
COURT OF CRIMINAL APPEALS

AUGUST 7, 2015

ABEL ACOSTA, CLERK

§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687   FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

LISA C. MCMINN,
State Prosecuting Attorney

## ORAL ARGUMENT IS NOT REQUESTED

## IDENTITY OF THE PARTIES AND COUNSEL

The State of Texas is represented by the Hon. Sharen Wilson, Tarrant County Criminal District Attorney. Additionally, representing the State on appeal is the Hon. Tanya S. Dohoney, Assistant Criminal District Attorney and Hon. Debra Windsor, Post-Conviction Chief. At the trial level, Hon. Kacey Fickes and Hon. Tanya S. Dohoney represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellee, Defendant below, is Dennis Michael Taylor. Hon. Mark G. Daniel, 115 West 2nd Street, Ste. 202, Fort Worth, Texas, 76102 represented Appellee at trial and now on appeal. Hon. Andrew J. Decker, at the same address, also represented Appellee on appeal.

The Hon. Louis E. Sturns, judge of the 213th Judicial District Court in Tarrant County, Texas, presided over Appellee's case.

# SUBJECT INDEX

PAGE

IDENTITY OF THE PARTIES AND COUNSEL ............................................. ii

SUBJECT INDEX ............................................................................. iii

INDEX OF AUTHORITIES ................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ........................................ 1

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ............. 2

STATEMENT OF FACTS .................................................................... 3

QUESTIONS PRESENTED FOR REVIEW .............................................. 5

FIRST QUESTION FOR REVIEW ........................................................ 5

Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment? (1CR at 18, 39-46)

SECOND QUESTION FOR REVIEW ..................................................... 5

Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?  (1CR at 18, 39-46)

THIRD QUESTION FOR REVIEW .......................................................... 5

Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?  (1CR at 18, 39-46)

ARGUMENT AND AUTHORITIES ........................................................... 6

I.   Valid, compelled statutory blood draw ...............................8

A.   Codification of Fourth Amendment principles...........................8
     1.   Exigency...............................................................8
     2.   Severity .............................................................9
     3.   Probable cause ..................................................11

B.   Special-needs framework adds to the reasonableness
     calculation ...............................................................12

C.   Erroneous consideration of the "Less Intrusive Means" test....13

II.   Implied-consent draws are reasonable ............................15

III.   Exclusionary rule inapplicable and not invoked..............17

CONCLUSION AND PRAYER...................................................20

CERTIFICATE OF COMPLIANCE............................................21

CERTIFICATE OF SERVICE..................................................21

APPENDIX ..................................................................... A

# INDEX OF AUTHORITIES

## Cases

*Breithaupt v. Abram*,
    352 U.S. 432 (1957) ................................................................ 16

*Cole v. State*,
    454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted) ........ 6n, 7

*Davis v. United States*,
    564 U.S. ___, 131 S. Ct. 2419 (2011) ....................................... 17, 18

*Douds v. State*,
    434 S.W.3d 842
    (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) ...... 6n, 7

*Heien v. North Carolina*,
    ___ U.S. ___, 135 S. Ct. 530 (2014) ......................................... 18, 19

*Holidy v. State*,
    No. 06-13-00261-CR, 2014 WL 1722171
    (Tex. App.—Texarkana Apr. 30, 2014, pet. granted)
    (mem. op., not designated for publication) ...................................... 6n

*Hulit v. State*,
    982 S.W.2d 431 (Tex. Crim. App. 1998) ................................... 15, 16

*Illinois v. Krull,*
    480 U.S. 340 (1987) ................................................................ 17

*Maryland v. King*,
    569 U.S. ___, 133 S. Ct. 1958 (2013) ....................................... 15

*McGee v. State*,
    105 S.W.3d 609 (Tex. Crim. App. 2003) ................................... 16

*McGruder v. State*,
    No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089
    (Tex. App.—Waco 2014, pet. granted) ...................................... 6n

*Michigan Dept. of State Police v. Sitz,*
    *496* U.S. 444 (1990) ......................................................15

*Michigan v. DeFillippo,*
    *443* U.S. 31 (1979) ........................................................19

*Missouri v. McNeely,*
    569 U.S. ___, 133 S. Ct. 1552 (2013)...........................*passim*

*Reeder v. State,*
    *428* S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) ..........6n

*Riley v. California,*
    ___ U.S. ___, 134 S. Ct. 2473 (2014)...............................11

*Segundo v. State,*
    *270* S.W.3d 79 (Tex. Crim. App. 2008),
    *cert. denied*, 558 U.S. 828 (2009) .............................. 15, 16

*Skinner v. Railway Labor Executives' Ass'n,*
    489 U.S. 602 (1989) .......................................... 12, 13, 14

*Smith v. State,*
    No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759
    (Tex. App.—Corpus Christi 2014, pet. granted) ..............................6n

*State v. Villarreal,*
    *PD*-0306-14, ___ S.W.3d ___,
    2014 WL 6734178 (Tex. Crim. App. 2014)................................*passim*

*State v. Taylor,*
    No. 02-14-00456-CR, 2015 WL 4504806
    (Tex. App.—Fort Worth July 23, 2015)....................................2, 7, 10

*Tharp v. State,*
    *935* S.W.2d 157 (Tex. Crim. App. 1996) ..........................................13

*Vernonia School Dist. 47J v. Acton,*
    *515* U.S. 646 (1995) ...............................................................14

*Weems v. State*,
  *434* S.W.3d 655 (Tex. App.—San Antonio  2014, pet. granted) ... 6n, 7

*Welsh v. Wisconsin*,
  466 U.S. 740 (1984) ....................................................................... 10

**Statutes, Rules, Constitutions**

TEX. CODE CRIM. PROC. art. 14.04 ............................................................ 10

TEX. CODE CRIM. PROC. art. 38.23 ................................................. 17, 18, 19

TEX. PENAL CODE § 1.07 ........................................................................... 18

TEX. PENAL CODE § 49.045 ....................................................................... 2, 8

TEX. TRANS. CODE § 524.012 .................................................................... 12

TEX. TRANS. CODE § 724.012 ............................................................ *passim*

TEX. R. APP. P. 66.3 .................................................................................... 7

U.S. CONST. amend. IV ........................................................................ 11, 15

## IN THE COURT
## OF CRIMINAL APPEALS OF TEXAS

| THE STATE OF TEXAS, | § | |
| *APPELLANT* | § | |
| | § | |
| V. | § | PD-_____-15 |
| | § | |
| DENNIS MICHAEL TAYLOR, | § | |
| *APPELLEE* | § | |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF
THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of this cause in accordance with the rules of appellate procedure.

## STATEMENT REGARDING ORAL ARGUMENT

Although the reasonableness of statutory mandatory blood draws merits argument, this Court has already granted petitions on similar issues and heard arguments from other parties regarding the issues discussed herein. Hence, the State does not request argument in this case.

1

## STATEMENT OF THE CASE

Appellee successfully suppressed the blood evidence in his felony driving while intoxicated [DWI] with a child passenger case. TEX. PENAL CODE § 49.045.[1] (1CR1:7, 18). After the pretrial hearing, the trial judge entered express fact-findings. (1CR at 39-46). The State relied on Texas' mandatory blood-draw statute to support the instant warrantless seizure of a blood sample. TEX. TRANSP. CODE §724.012(b)(2). Appellee relied on the Supreme Court's *McNeely* decision. *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). This State's appeal ensued. TEX. CODE CRIM. PROC. art. 44.01(a)(5).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Fort Worth Court of Appeals affirmed the trial court's suppression ruling in an unpublished *per curiam* opinion; the panel included Justices Meier, Dauphinot, and Walker, and Justice Walker concurred in the result. *State v. Taylor*, No. 02-14-00456-CR, 2015 WL 4504806 (Tex. App.—Fort Worth July 23, 2015). No party sought rehearing. The State timely files this petition.

---

[1] Statutory references cited throughout refer to the current version unless noted.

## STATEMENT OF FACTS

Appellee's felony DWI with a child arose after a 9-1-1 call about a possibly intoxicated person causing a disturbance outside a gymnastics studio. (1CR at 39-46 [FOF 1-6]). A City of Keller officer stopped the dispatch-described vehicle as it was departing the facility when the 9-1-1 caller directed the officer's attention to the suspect's vehicle. (1CR at 39-46 [FOF 5-7]). Appellee's SUV carried four younger-than-teen-aged children. (1CR at 39-46 [FOF 10, 19, 21]).

At the scene, the officer quickly garnered information showing Appellee's intoxication, including: alcohol on breath and person; slurred speech; admitted consumption of margaritas at dinner; six-out-of-six HGN clues; inability to pass the walk-and-turn test; and decision to decline one-leg-stand test. (1CR at 39-46 [FOF 7, 9-18]).

Appellee's DWI with a child arrest occurred at 10:21 p.m. (1CR at 39-46 [FOF 19]). Another Keller officer assisted and remained with the children at the scene. (1CR at 39-46 [FOF 8, 22]). At the Keller Police Department, Appellee received DWI-related admonishments and refused to take a blood test. (1CR at 39-46 [FOF 24-26]). Pursuant to extant state law, the officer took Appellee to a nearby hospital where a registered nurse

3

drew Appellee's warrantless, non-consensual blood sample at 11:34 p.m. (1CR at 39-46 [FOF 27-33]). TEX. TRANSP. CODE § 724.012(b).

During the suppression hearing the State conceded that, at the time of Appellee's crime, the Keller Police Department had created an efficient protocol for obtaining blood search warrants for DWI suspects. (1CR at 39-46 [FOF 46, COL 12-15]). Local magistrates were available 24/7 within close proximity to the jail. (1CR at 39-46 [FOF 39-58,60-61; COL 12]). As the trial court expressly found, the Keller officer possessed the tools, time, and skill to efficiently obtain a search warrant on the night of Appellee's arrest. (1CR at 39-46 [FOF 57; COL 12-15]). Instead, however, Officer Hicks relied upon Section 724.012(b) of the Transportation Code, commonly referred to as the mandatory draw provision of Texas' implied consent statute, to compel the draw. (1CR at 39-46 [FOF 32-33, 59; COL 10]). TEX. TRANSP. CODE §724.012(b). Indeed, the trial court concluded that the Texas Transportation Code required Officer Hicks to obtain a sample from Appellee for blood-alcohol testing. (1CR at 39-46 [FOF 4; COL 4). TEX. TRANSP. CODE §724.012(b).

At pretrial, the State also argued the inapplicability of the exclusionary rule to Appellee's scenario. (1CR at 123-24). Nevertheless, the lower

4

court found good faith rationales inapplicable to the instant scenario.  (1CR

at 39-46 [COL 16-17,19]).


## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION FOR REVIEW
**Does a warrantless, nonconsensual blood draw
conducted pursuant to TEX. TRANSP. CODE § 724.012(b)
violate the Fourth Amendment?
(1CR at 18, 39-46)**

### SECOND QUESTION FOR REVIEW
**Are Fourth Amendment warrant-preference exceptions
the sole measure of Fourth Amendment reasonableness
in warrantless scenarios?
(1CR at 18, 39-46)**

### THIRD QUESTION FOR REVIEW
**Do exclusionary rule principles mandate suppression of
blood evidence seized via a warrantless, nonconsensual,
valid-at-the-time mandatory blood draw?
(1CR at 18, 39-46)**

## ARGUMENT AND AUTHORITIES

This Court is in the midst of grappling with the issues presented herein. At his pretrial suppression hearing, Appellee invoked the Supreme Court's 2013 decision in *Missouri v. McNeely* to undermine the admissibility of the statutorily based blood draw evidence in this case. *See Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013). Whilst a November 2014 decision addressed the merits of how *McNeely* impacts the Fourth Amendment's application to statutory blood draws, the validity of *Villarreal's* original holding is steeped in uncertainty since the Court continued to grant petitions and hear arguments in other cases, while also granting rehearing last February in *Villarreal. State v. Villarreal*, PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178 (Tex. Crim. App. 2014) (reh'g granted, re-submitted Mar. 18, 2015).[2]     The Fort Worth court's decision in this case heavily

---

[2] The appellate milieu includes six other submitted *McNeely*-inspired cases, with yet another case granted and waiting in the wings for submission. *Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (submitted on arguments Mar. 13, 2015, PD-0857-14); *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) (submitted on arguments Nov. 19, 2014, PD-0635-14); *Reeder v. State*, 428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) (submitted on arguments Jan. 14, 2015, PD-0601-14); *Smith v. State*, No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759 (Tex. App.—Corpus Christi 2014, pet. granted) (submitted Apr. 29, 2015, PD-1615-CR); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089 (Tex. App.—Waco 2014, pet. granted) (submitted Apr. 15, 2015, PD-1263-14); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication) (submitted on arguments Jan. 14, 2015, PD-0622-14); *see also Cole v.*

6

relied on this Court's original *Villarreal* opinion. *State v. Taylor*, 2015 WL 4504806, at \*1–2 (*citing Villarreal*, 2014 WL 6734178, at \*10-16).

The State's instant petition focuses on two aspects of any *McNeely-*related consequences: *the validity of a statutorily compelled draw and the invalidity of the exclusionary rule's application*. *Villarreal* only resolved the merits of the mandatory-draw issue and did not address the applicability of the exclusionary rule. *Villarreal*, 2014 WL 6734178, at \*1-23. However, the exclusionary rule argument is also before this Court. *See Cole*, 454 S.W.3d at 89 (fourth ground granted); *see also Weems*, 434 S.W.3d at 666 (applying exclusionary rule); *Douds*, 434 S.W.3d at 861–62 (same). In other words, this Court has already granted review on both issues presented herein.

This Court should grant review because this case focuses on important legal questions that have not yet been finally addressed, matters in conflict in the interim appellate courts, the misinterpretation of a Supreme Court decision, and the misapplication of that Supreme Court case to the Texas implied-consent statute. TEX. R. APP. P. 66.3(a),(b),(c),(d),(f).

---

*State*, 454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted Apr. 22, 2015) (awaiting submission, PD-0077-15).

7

**I.    Valid, compelled statutory blood draw**

The State's appellate stance is in lockstep with that of prosecutors from other counties across the State who have already had cases granted for review on a *McNeely*-related issue. *See* n.2, *supra.* Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Douds*, *Weems*, *Reeder*, *Smith*, *McGruder*, *Holidy*, and *Cole*. *See id.* Here, the officer reasonably relied on an existing, ubiquitous, narrowly focused, reasonable statute to obtain a compelled blood draw. The seizure occurred when the officer—at the time of the offense—possessed probable cause that Appellee's impaired and intoxicated conduct constituted felony DWI. TEX. PENAL CODE § 49.045; TEX. TRANSP. CODE § 724.012(b)(2).

In addition, the State differs with *Villarreal's* original-submission decision and respectfully suggests that the opinion was mistaken. The State further asserts that several important arguments should be considered.

**A.    Codification of Fourth Amendment principles**

**1.    Exigency**

The applicable Transportation Code provisions codify several Fourth Amendment principles. For instance, the exigency exception underpins the

8

rationale of Texas' mandatory draw provisions in the implied-consent statute. TEX. TRANSP. CODE § 724.012(b)(2). Indeed, *McNeely* itself recognized that every case involving blood alcohol included some exigency due to dissipation; *McNeely* simply disallowed a *per se* exigency. *McNeely*, 133 S. Ct. at 1561, 1568.[3] The Supreme Court recognized this exigency always exists in every drunk-driving related case. *Id.* (". . . for in every case the law must be concerned that evidence is being destroyed."). The mandatory draw statute codifies Fourth Amendment exigency principles by streamlining evidence gathering in certain limited cases. TEX. TRANSP. CODE § 724.012(b).

### 2. Severity

Combine the static alcohol-evaporation exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguishes a defendant's right to refuse where an officer believes that certain enumerated, egregious circumstances exist. TEX. TRANSP. CODE § 724.012(b). Defendants only lose their refusal right under carefully circumscribed scenarios involving

---

[3] Logically, ignoring application of the evaporative aspect of alcohol actually applies a converse *per se* rule, again conflicting with the Fourth Amendment's totality-of-the-circumstances roots and *McNeely's* rationale.

9

felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization. *Id*.

This statutory limitation amounts to a codification of a recognized exigency unrelated to blood-alcohol dissipation. *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness because the State's interest is greater in a more serious case. *Cf.* TEX. CODE CRIM. PROC. art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense). While *Welsh's* facts involved consideration of an exigency authorizing entry into a home, the hierarchy found in Chapter 14 reveals that the severity-of-the-crime exigency applies to circumstances beyond a warrantless home-entry scenario. *But see State v. Taylor*, 2015 WL 4504806, at \*2.

Contrary to the interim appellate court's assessment, several factors reveal the reasonableness of the mandatory draw provisions of the implied-consent statute. *Id.* The State's position is predicated on consideration of the serious nature of the crimes statutorily singled out; the grave nature of

10

the enumerated provisions codifies the *Welsh* exigency. Additionally, the always-dissipating nature of blood alcohol provides another factor in the reasonableness analysis, along with the fact of the defendant's refusal to provide a voluntary sample. Where these three circumstances exist and, as discussed *infra*, the officer harbors a constitutional quantum of evidence known as probable cause, constitutional reasonableness validates obtaining a compelled blood draw.

### 3. Probable cause

Of course, it almost goes without saying that Texas' implied-consent legislation codified Fourth Amendment probable-cause requirements. U.S. CONST. amend. IV. Predicate elements of the implied consent statute codify this well-known quantum-of-evidence as a requirement for a compelled search. TEX. TRANSP. CODE § 724.012(b). Probable cause, along with the exigencies based upon the gravity-of-the-crime and the dissipation-of-alcohol exigency, create a framework that provides a neutral set of guidelines authorizing a narrowly defined seizure from an already-in-custody arrestee. By including the probable-cause requirement as part of the blood-draw predicate, the implied-consent framework guarantees that a subject's privacy expectations are diminished by the fact of a valid, probable-cause-based arrest. *See Riley v. California*, ___ U.S. ___, 134 S.

11

Ct. 2473, 2485 (2014). The aggregate effect of these provisions reveals that the statutory framework embraces the essence of Fourth Amendment reasonableness.

In sum, the mandatory draw statute codifies the exigency exception in the circumscribed instances. Furthermore, it does so in light of two other Fourth Amendment principles: consideration of a crime's severity and the well-known probable cause standard. These Fourth Amendment underpinnings imbue the mandatory draw provisions of the Texas Transportation Code with constitutional reasonableness.

## B. Special-needs framework adds to the reasonableness calculation

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special-needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178, at *14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, the Court did not consider that blood drawn pursuant to Chapter 724's mandate also implicates administrative license revocation procedures, a separate regulatory process that focuses on protecting the traveling public by removing offenders from the road. *See* TEX. TRANSP. CODE § 524.012(b)(1) (mandating license suspension based upon BAC).

"The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996). Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner* sought to increase railway safety by detecting intoxicated employees. *Compare Skinner*, 489 U.S. at 620–21 with *Tharp*, 935 S.W.2d at 159.

Special needs' principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in a non-dualistic analysis that renders Texas' compelled-draw framework reasonable.

**C. Erroneous consideration of the "Less Intrusive Means" test**

The original *Villarreal* opinion considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct

13

and, instead, weigh considerations of alternative means. *But see McNeely*, 133 S. Ct. at 1560–64 (Part IIB's alternative-means analysis applied when determining whether *per se* exigency existed).

The Supreme Court resoundingly rejected applying less-intrusive-alternative-practices arguments to Fourth Amendment cases not resolved under the exigency exception. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–64 n.3 (1995) (upholding warrantless, random urine screening of athletes after considering diminished privacy, unobtrusiveness, and severity of need, spurning arguments relying on less intrusive alternatives); *Skinner*, 489 U.S. at 629 n.9 (upholding random, suspicionless drug screening of railway employees under special-needs exception and discarding less-drastic-and-equally-effective-means arguments). One footnote in *Skinner* flatly debunks the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellee's facts. *Id.*

The State maintains that less-restrictive-alternatives logically apply when a seizure's validity rests solely on the temporal factors presenting an exigency; less-drastic, *post-hoc* what-ifs do not apply, however, to reasonableness calculations factoring in other warrantless exceptions.

14

Hence, *Villarreal's* analysis mistakenly applied this eschewed construct to discount the application of non-exigency-related Fourth Amendment principles.

## II.    Implied-consent draws are reasonable

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language.   U.S. CONST. amend. IV; *Hulit v. State*, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App. 1998).  Discernment of what is "reasonable" requires courts to consider the balance between an individual's privacy and legitimate governmental interests, especially when public safety is of utmost concern.   *See Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 828 (2009).

*Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs.  The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that the Court of Criminal Appeals has relied upon the balancing approach to assay reasonableness on similar issues.

*See Segundo*, 270 S.W.3d at 96–99; *McGee v. State*, 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit*, 982 S.W.2d at 434 n.1, 436.

Again, the statute is reasonable. Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical. The *Breithaupt* Court pointed to then recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when weighing the needs of all involved. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known exceptions—as argued in the myriad cases already granted before the Court of Criminal Appeals—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

16

## III. Exclusionary rule inapplicable and not invoked

Statutory mandatory blood-draws are reasonable. *But see Villarreal*, 2014 WL 6734178 (opinion on original submission; under re-submission). When the ink dries on *Villarreal* and future *McNeely*-related decisions, and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2013 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted with objectively reasonable reliance on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently overruled. *Illinois v. Krull*, 480 U.S. 340, 349–57 (1987) (statutes); *Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 2428–34 (2011) (caselaw).

Under state law, the Texas exclusionary rule is not invoked because—at the time of the offense—no violation occurred. The State recognizes that article 38.23(b)—Texas' limited good-faith exception—requires a warrant. TEX. CODE CRIM. PROC. art. 38.23(b). Notwithstanding, *invocation* of exclusionary rule principles relies on subsection (a) of article 38.23. TEX. CODE CRIM. PROC. art. 38.23(a). That subsection's plain language requires a violation for exclusion to be triggered. When

Appellee's blood was drawn, no one credibly questioned the validity of the officer's statutory authority. In other words, at the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE § 1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *Davis*, 131 S. Ct. at 2427–28 ("obtained" applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, the instant circumstances do not invoke exclusion.

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently. In *Heien,* the Court weighed the validity of an investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop. *See Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 538–39 (2014). The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies. In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct—valid at the time—was later declared unconstitutional. *Id*. With only one justice dissenting, the Supreme Court's decision

18

pondered the exclusionary rule's limits pursuant to *Michigan v. DeFillippo.* *Heien*, 135 S. Ct. at 538–39; *see generally Michigan v. DeFillippo*, 443 U.S. 31, 3–9 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and flagrantly unconstitutional").

Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct fully complied with mandatory, settled law at the time of Appellee's arrest. *Heien*, 135 S. Ct. at 538–39. *McNeely* and subsequent caselaw questioning implied-consent blood draws came later. Since the officer's conduct did not constitute a violation at the time of Appellee's August 2011 blood draw, Texas' exclusionary provision does not apply. TEX. CODE CRIM. PROC. art. 38.23(a). Also, since the officer's conduct at the time of the arrest was reasonable, Fourth Amendment cases do not mandate the remedy of exclusion. *See Heien*, 135 S. Ct. at 539.

## CONCLUSION AND PRAYER

Review should be granted and the decision of the Court of Appeals should be reversed; Appellee's felony DWI with a child conviction should be upheld.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Tanya S. Dohoney
TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No.  02760900
ccaappellatealerts@tarrantcountytx.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains less than 4300 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

## CERTIFICATE OF SERVICE

A true copy of the State's petition for discretionary review has been e-served to opposing counsel, the Hon. Mark G. Daniel, mgd1016@aol.com, Sundance Square, 115 West Second Street, Suite 202, Fort Worth, Texas, 76102, on this, the 5th day of August 2015.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

072715 st v taylor mcneely.docx

# **APPENDIX**

*State v. Dennis Michael Taylor*,
2015 WL 4504806
(Tex. App.—Fort Worth 2015)

A

2015 WL 4504806
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH TEX. R. APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

The State of Texas, Appellant
v.
Dennis M. Taylor, State

NO. 02–14–00456–CR   |
DELIVERED: July 23, 2015

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY, TRIAL COURT NO. 1325354D. LOUIS E. STURNS, JUDGE

**Attorneys and Law Firms**

Mark G. Daniel, Andrew J. Decker; Fort Worth, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra Windsor, Chief of Post–Conviction; Tanya S. Dohoney, Kacey S. Fickes, Assistant Criminal District Attorneys for Tarrant County; Fort Worth, TX, for State.

PANEL: MEIER, DAUPHINOT, and WALKER, JJ.

**MEMORANDUM OPINION** [1]

[1]    *See* Tex.R.App. P. 47.4.

PER CURIAM

### I INTRODUCTION

 **\*1**  The State appeals from the trial court's order granting appellee Dennis M. Taylor's motion to suppress. In three points, the State argues that the trial court abused its discretion by ruling that the arresting officer in this case violated Taylor's Fourth Amendment rights when he had medical personnel perform amandatory blood draw from Taylor in accordance with Texas Transportation Code section

724.012(b). Tex. Transp. Code Ann. § 724.012(b) (West 2011). We will affirm.

### II. BACKGROUND

The facts adduced at the suppression hearing in this case are not in dispute. After being dispatched on a disorderly-conduct complaint, Keller Police Officer Johnathan Hicks stopped Taylor's vehicle. According to Hicks's testimony, when he made contact with Taylor, he smelled alcohol on Taylor's breath and person, and Taylor demonstrated slurred speech. Taylor also admitted to Hicks that he had consumed "a couple of margaritas" that night. Other indicia of intoxication included Taylor's failure of the horizontal gaze nystagmus test and his inability to successfully complete the walk-and-turn test. Taylor refused further field-sobriety tests, and Hicks arrested him for DWI with a child passenger. [2] *See* Tex. Penal Code Ann. § 49.045 (West 2014). Upon arriving in custody at the Keller Police Department, Taylor received DWI-related admonishments and then refused to submit to a blood test when requested. Hicks then took Taylor to a nearby hospital and obtained a warrantless, nonconsensual blood-draw.

[2]    There were four children who were passengers in Taylor's vehicle.

Hicks testified that he possessed the time, ability, and articulable facts to obtain a warrant, but said instead that he relied solely on the Transportation Code's mandatory provisions of the implied-consent statute. *See* Tex. Transp. Code Ann. § 724.012(b). A registered nurse drew Taylor's compelled sample a little over an hour after the arrest. The trial court granted Taylor's suppression motion regarding the blood draw, and this accelerated appeal by the State followed. *See* Tex.Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp.2014) (providing that under specific conditions, the State may appeal an order that "grants a motion to suppress evidence").

### III. DISCUSSION

Following the United States Supreme Court's decision in *Missouri v. McNeely,* the court of criminal appeals has held that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. —— U.S. ——, 133 S.Ct. 1552, 1563 (2013); *State v. Villarreal,* —— S.W.3d

——, No. PD–0306–14, 2014 WL 6734178, at \*10–16 (Tex.Crim.App. Nov. 26, 2014) (reh'g granted). Specifically, the court in *Villarreal* rejected the State's arguments that (1)a warrantless, nonconsensual blood test under the Transportation Code should be upheld as categorically reasonable under the consent exception—applicable in the form of a prior waiver through implied consent, the automobile exception, the special-needs exception, or the search-incident-to-arrest exception, (2) a blood draw should be treated as a seizure instead of a search, and (3) such a search may be upheld on the basis that it is reasonable under a general Fourth Amendment balancing test. *Id.* at ——, 2014 WL 6734178, at \*10–17. As the State points out, the court of criminal appeals granted rehearing of *Villarreal* on February 25, 2015.

**\*2** Even after the court of criminal appeals granted rehearing, however, this court, along with several other Texas intermediate courts of appeals, has consistently followed the *Villarreal* precedent. *See Bowyer v. State,* No. 02–13–00315–CR, 2015 WL 1120332, at \*1 (Tex.App.–Fort Worth, Mar. 12, 2015, pet. filed) (mem. op., not designated for publication); *see also Burcie v. State,* No. 08–13–00212–CR, 2015 WL 2342876, at \*1 (Tex.App.–El Paso, May 14, 2015, no pet.) (not designated for publication); *Moser v. State,* No. 04–13–00826–CR, 2015 WL 1938865, at \*1 (Tex.App.–San Antonio, Apr. 29, 2015, pet. filed) (mem op., not designated for publication).

In this case, in addition to the array of arguments that this court has already rejected in our cases that have followed *Villarreal,* the State argues that an exigency exception to the Fourth Amendment warrant requirement, based on the gravity of the underlying offense, should apply to the Transportation Code's mandatory provisions of the implied-consent statute and that upon considering this proposition, we should hold that the Transportation Code's mandatory provisions of the implied-consent statute are reasonable under a Fourth Amendment analysis. See *Burks v. State,* 454 S.W.3d 705, 709 (Tex.App.–Fort Worth 2015, pet. filed) ("Following *Villarreal,* we hold that this warrantless, nonconsensual blood draw conducted pursuant to the mandatory-blood-draw and implied-consent provisions of the Texas Transportation Code violated the Fourth Amendment."); *see also Bowyer,* 2015 WL 1120332, at \*2 (same); *Chidyausiku v. State,* 457 S.W.3d 627, 631 (Tex.App.–Fort Worth 2015, pet. filed) ("But, as the *McNeely* court held, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every

case sufficient to justify conducting a blood test without a warrant.").

The State's position is predicated on language from the Supreme Court's decision in *Welsh v. Wisconsin.* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98 (1984). But the State's reliance on *Welsh,* a warrantless-entry-into-the-home case, is misplaced. In *Welsh,* the Court examined whether the need to obtain the blood-alcohol level of a driver who had fled the scene of an accident would constitute an "exigent circumstance." *Id.* at 742, 104 S.Ct. at 2100. The driver in *Welsh* lost control of his car and ended up in a field, causing no injury or damage. A witness who saw the driver walk away told the police that the driver was either inebriated or sick. *Id.* at 742, 104 S.Ct. at 2904. The police went to the driver's house and entered after the driver's stepdaughter answered the door. They found the driver in bed, arrested him, and asked him to take an impliedconsent test. He declined. When his license was automatically suspended for refusing the blood test, he challenged that decision. *Id.* at 753–54, 104 S.Ct. at 2099–2100.

The *Welsh* Court held that neither exigent circumstances nor hot pursuit justified the entry into Welsh's home. *Id.* at 748–49, 104 S.Ct. at 2096–97. In reaching this holding, the *Welsh* Court relied heavily on the nature of the alleged offense, which in Wisconsin was a civil forfeiture traffic violation where no imprisonment was possible. *See id.* at 746, 104 S.Ct. at 2095. The *Welsh* Court reasoned that the exigencies were insufficient to overcome the warrant requirement in the context of an arrest for a civil traffic offense. *Id.* Nonetheless, the Court stated that an important factor in determining whether an exigency exists is "the gravity of the underlying offense for which the arrest is being made." *Id.* at 753, 104 S.Ct. at 2099. The *Welsh* Court also clearly explained that the exigency they were referring to was the potential dissipation of blood-alcohol content. *See id.* ("The State attempts to justify the arrest ... on the need to preserve evidence of the petitioner's blood-alcohol level.") *cf. McNeely,* ——U.S. ——, 133 S.Ct. 1552, 1568 ("We hold that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

**\*3** Even though the *Welsh* Court stopped short of drawing a bright line between felonies and nonfelonies, the opinion states that circumstances are more clearly exigent when the offense involved is a "serious crime." *Welsh,* 466 U.S. at

752, 104 S.Ct. at 2099. The reasoning in *Welsh* spawned a number of cases recognizing the proposition that blood-alcohol dissipation *may* create a destruction-of-evidence exigency justifying a warrantless entry into a home. *State v. Komoto,* 40 Wn.App. 200, 213, 697 P.2d 1025, 1033 (1985); *People v. Keltie,* 148 Cal.App.3d 773, 781, 196 Cal.Rptr. 243, 247 (1983); *Stark v. New York State Dep't of Motor Vehicles,* 104 A.D.2d 194, 197, 483 N.Y.S.2d 824 (1984).

Thus, and contrary to the State's position in this case, *Welsh* stands for (and has been widely interpreted and applied as standing for) the proposition that an exigency based on blood-alcohol dissipation can sometimes exist. Therefore, the State's argument in this case—that the Transportation Code's mandatory blood-draw provision's limitation of only authorizing compelled draws in the most serious offenses is a "recognized exigency" unrelated to blood-alcohol dissipation —is dubious. Further, *Welsh* specifically reasoned that the "nature of the underlying offense" is an important factor, but it is not a sufficient factor in and of itself to create exigency. 466 U.S. at 751–52, 104 S.Ct. at 2098–99.

Harkening back to Justice Jackson's concurrence in *McDonald v. United States,* the *Welsh* Court illuminated that when no true emergency is present, the method of law enforcement that statutorily dispenses with a warrant requirement "displays a shocking lack of all sense of proportion." *Id.* (citing *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191 (1948) (Jackson, J. concurring)).

Here, even assuming that we are to consider the gravity of the offense of DWI with child passengers as an important factor which might have led Hicks to believe that exigent circumstances required him to obtain a warrantless blood draw, no such circumstances existed in this case. Indeed,

Hicks testified at the suppression hearing that he had both the availability and time to obtain a warrant, and the only reason he did not do so is because he was relying on the Transportation Code's mandatory blood-draw provisions. Thus, "[a]pplication of [the *Welsh*] principle to the facts of the present case is relatively straightforward," and to allow a warrantless blood-draw in this case "would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction." *Welsh,* 466 U.S. at 753–54, 104 S.Ct. at 2099–2100.

In short, despite having time to obtain a warrant, the officer in this case relied exclusively on the mandatory provisions of Transportation Code section 724.012(b)(2) for the warrantless blood draw. *See* Tex. Transp. Code Ann. § 724.012(b)(2). And we hold again that this warrantless, nonconsensual blood draw conducted pursuant to the mandatory-blood-draw and implied-consent provisions of the Texas Transportation Code violated the Fourth Amendment. *See Burks,* 754 S.W.3d at 709. We overrule the State's three points.

## IV. CONCLUSION

We hold that the trial court did not err by granting Taylor's motion to suppress the results of the warrantless blood draw, and we affirm the trial court's order.

WALKER, J., concurs without opinion.

**All Citations**

Not Reported in S.W.3d, 2015 WL 4504806

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.